Filed 11/26/13  Marriage of O'Neill and Mitruka CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of SHEA O'NEILL and SURINDRA N. MITRUKA. | |
| | D062049, D062539 |
| SHEA O'NEILL, | |
| Appellant, | (Super. Ct. No. D468997) |
| v. | |
| SURINDRA N. MITRUKA, | |
| Respondent. | |

APPEAL from an order of the Superior Court of San Diego County, Susan D. Huguenor, Judge.  Affirmed.  Motion for sanctions granted.

Dunne & Dunne and Anthony J. Dunne for Appellant.

Sandler, Lasry, Laube, Byer & Valdez LLP, Edward I. Silverman; Huntington & Haviland and Marjorie A. Huntington for Respondent.

Surindra Mitruka appeals from postjudgment orders in favor of his former wife, Shea O'Neill, in the parties' marital dissolution proceeding.  Specifically, Mitruka

challenges the family court's orders (1) that he pay child support arrearages relating to O'Neill's child care expenses and, going forward, make a monthly payment of $1,600 to O'Neill for a portion of her child care expenses; (2) that, pursuant to Family Code section 3557,[1] he pay $8,000 for attorney fees that O'Neill incurred in obtaining the order establishing the arrearages; and (3) denying Mitruka's request that O'Neill pay the attorney fees that Mitruka incurred in responding to a discovery motion that O'Neill filed and later withdrew. We conclude that Mitruka's appeal is without merit, and we accordingly affirm the family court's postjudgment orders.

O'Neill has filed a motion for sanctions on appeal, which we also address in this opinion. We conclude that sanctions in the amount of $22,000 against Mitruka and his attorney, Anthony J. Dunne, are warranted on a joint several basis because the appeal is frivolous and taken solely for delay.

I

FACTUAL AND PROCEDURAL BACKGROUND

O'Neill and Mitruka were married in 1993 and have four children, born in 1996, 1997, 2000 and 2002. In 2003 the parties obtained a judgment of dissolution. A marital settlement agreement specified that the parties were to have joint legal custody of the children and the children were to reside with O'Neill during the week and on certain weekends.

---

[1]     Unless otherwise indicated, all further statutory references are to the Family Code.

2

The parties are both medical doctors with full-time jobs. In 2006, the parties stipulated that each party would bear his or her own child care expenses. This arrangement changed when, as a result of a September 2010 hearing, the family court ordered that each party was to pay one-half of the other party's employment-related child care expenses.

On June 15, 2011, O'Neill filed an order to show cause to establish child support arrearages consisting of unreimbursed child care expenses.[2] A declaration attached to the order to show cause stated that Mitruka owed $10,384 in arrearages for child care expenses from October 2010 to May 2011. Except for partial payment of the October 2010 child care expenses, Mitruka had not reimbursed O'Neill for any of her child care expenses from October 2010 forward. On the form filed in connection with her order to show cause, O'Neill indicated that she was seeking attorney fees. In a supplemental declaration that O'Neill filed in November 2011, O'Neill specified that she was seeking attorney fees under section 3557.

The hearing on O'Neill's order to show cause was continued several times, and O'Neill filed several declarations updating the amounts owed by Mitruka. O'Neill supported the declarations with copies of records from the professional payroll service she used to pay her regular child care providers and from her bank's bill pay service for payments to additional child care providers. The amounts that O'Neill claimed as

---

[2]     In June 2011, when O'Neill filed the order to show cause to establish the arrearages, the parties' four children were 9, 11, 13 and 15 years old.

Mitruka's 50 percent responsibility for child care expenses from September 2010 to February 2012 ranged from $1,042 to $2,133 per month. According to the declarations submitted by O'Neill, Mitruka had failed to pay a total of $23,631 in child care expenses through February 2012.

The family court held an evidentiary hearing on O'Neill's order to show cause on November 14, 2011. According to O'Neill's testimony during that hearing and the declarations she filed in support of her order to show cause, O'Neill generally uses 30 to 40 hours per week of child care. O'Neill stated that she leaves for work on weekdays around 6:45 a.m. The child care provider arrives at 6:30 a.m. and stays on the job until the youngest child goes to school at 8:30 a.m. On most days, the child care provider returns to the house at approximately 2:00 p.m. when the children start coming home from school, and she stays until around 6:30 p.m., as O'Neill returns home from work between 6:15 p.m. and 6:30 p.m. O'Neill also works certain weekend shifts, for which she requires child care if she has any of the children in her care on those weekends.

According to O'Neill's testimony, her child care providers are responsible for taking care of the children and providing transportation for them, but they do not clean the house. O'Neill employs a different woman as a housekeeper. O'Neill stated in her declaration that "[m]y childcare expenses are exclusively for day care while I am employed."

O'Neill's former child care provider was paid at the rate of $16 per hour when she first started in 2005 and, after a series of annual raises, was paid $21 per hour at the end of her employment. The more recently hired child care provider is paid $18 per hour.

4

O'Neill also explained that although the older children can sometimes be left alone at home, they need child care providers to transport them to activities and to provide an adult presence and regular supervision at home after school. O'Neill testified that she did not consider it to be the responsibility of the older children to provide child care for the younger children after school.

Mitruka provided evidence by declaration and live testimony at the November 14, 2011 hearing. According to statements in his declaration, Mitruka believes that the child care expenses are not necessary in the morning because the children could get to school by walking or riding their bikes shortly after O'Neill leaves for work in the morning, and that after school "[t]he longest period of time the [three older children] would be alone at home in the afternoon was three hours," and "there is no reason to believe that our 15-year[-]old daughter . . . could not have walked to school, picked up her younger [elementary school aged] brother, . . . and walked home with him." Mitruka stated that if child care was necessary at all, it was only 14 hours a week to care for the youngest child in the morning and after school. During his testimony, Mitruka stated, "[I]t has been clearly documented that while the children are in school and [O'Neill] is working, she needs child care for approximately 12, 14 hours per week."

According to Mitruka, a child care provider caring for only one child should charge no more than $10 per hour, for a total of $140 per week. In his declaration, Mitruka also asserted his belief that O'Neill's child care providers are actually "personal assistants doing everything but watching our children so that [O'Neill] can work (*e.g.*,

5

taking the dogs to the veterinarian, picking up drycleaning, shopping, servicing [O'Neill's] car, scheduling in-home maintenance)."

During the evidentiary hearing, Mitruka discussed his own child care expenses. Because he is on call at the hospital two weekends per month, he pays a child care provider $15 per hour to be on standby during those weekends if he has the children in case he is called to the hospital. Mitruka has made requests to O'Neill that she reimburse him $650 per month for half of that child care expense.

During O'Neill's testimony, counsel for Mitruka asked O'Neill about Mitruka's request for reimbursement of his child care expenses. O'Neill testified that she believed that although it was reasonable for her to pay half of Mitruka's child care expenses for the times when someone was *actually providing* care, it was not reasonable for her to reimburse Mitruka for half of the expense of having someone on standby at the rate $15 per hour all weekend.

A further hearing was held on March 29, 2012, to resolve O'Neill's order to show cause. At the hearing, counsel for O'Neill informed the court that O'Neill agreed she owed certain reimbursements to Mitruka for his child care expenses, which Mitruka had documented only through September 2011. Specifically, O'Neill agreed that she owed Mitruka $680 for the expense of hiring a driver to transport the children between houses and $2,160 for other documented child care costs.

Ruling on O'Neill's order to show cause, the family court found that O'Neill's child care costs were reasonable and necessary considering her work schedule. It therefore determined that Mitruka owed $23,631 plus interest for child support arrearages, and that

6

Mitruka would be required make monthly child care payments of $1,600 to O'Neill on a going forward basis. Based on O'Neill's admission that she owed Mitruka $2,840 for the expense of the driver and the other child care expenses, the family court deducted $2,840 from the $23,631 owed by Mitruka, and concluded that Mitruka should pay O'Neill a total of $20,841 plus interest in arrearages.

Rejecting Mitruka's contention that O'Neill's child care expenses were not reasonably incurred, the family court explained that it "found the care necessary in light of [O'Neill's] hours." The family court stated, "She works very long hours, multiple days of the week. And it's not just a matter of sitting and watching children while they do their homework. They're being driven places, and there are times when one is sick or one has a doctor's appointment or all of the things that can go wrong when you are multitasking."

The family court continued the hearing on O'Neill's attorney fee request to May 7, 2012. At that hearing the family court considered O'Neill's request for attorney fees, and it also considered a separate request made by Mitruka to be awarded attorney fees that he incurred in opposing a motion to compel responses to demands for production that O'Neill had filed in January 2012 but had withdrawn in March 2012 after Mitruka changed jobs, rendering irrelevant the financial documents at issue in the motion to compel.[3]

---

3    Specifically, O'Neill served Mitruka with a demand for production of documents, a notice to produce tax returns, and a notice of taking deposition and production of documents to which Mitruka did not respond.

7

At the May 7, 2012 hearing, counsel for Mitruka presented arguments in favor of Mitruka's attorney fee request and against O'Neill's attorney fee request. With respect to Mitruka's own attorney fee request, counsel argued that the fees Mitruka incurred in connection with O'Neill's withdrawn motion to compel should be awarded because Mitruka was the "prevailing party" in that O'Neill's withdrawn motion was purportedly not timely filed and O'Neill did not file a separate statement to support the motion.[4] At the hearing, counsel argued that Mitruka "should recover $3,000 in fees for having to oppose that motion." In supplemental briefing filed on May 16, 2012, Mitruka stated that he was making a request for $5,000 in fees. Neither at the hearing nor in any of his briefing did Mitruka provide evidentiary support for his attorney fee request or explain how he arrived at the figure of $3,000 or $5,000.

With respect to O'Neill's request for attorney fees, counsel for Mitruka argued that the request should be denied because O'Neill "didn't serve the [attorney fee] motion timely" and did not give Mitruka notice that she was relying on section 271 or section 3557 as a basis for the attorney fee request.

The family court gave the parties until May 16 to submit additional pleadings on the issue of whether O'Neill's attorney fee motion was timely filed and served. O'Neill filed a declaration documenting (1) service in June 2011 of her order to show cause to establish child support arrearages, which included a request for attorney fees, and (2) her

---

4  Before O'Neill withdrew the motion to compel, Mitruka filed an opposition in which he argued that the motion to compel should be denied as untimely and because it did not include a separate statement.

8

November 8, 2011 supplemental declaration, which states, "I am asking for additional attorney fees pursuant to [section] 3557."

The family court granted O'Neill's request for attorney fees in the amount of $8,000.[5]  The family court specifically stated that the award was based on section 3557 and that "the motion upon which the fee order is granted was filed June 15, 2011, in addition to the Supplemental Declaration of Petitioner filed November 8, 2011."  The family court denied Mitruka's request for attorney fees.

Mitruka filed notices of appeal from (1) the family court's ruling on his obligation to pay O'Neill's child care expenses; and (2) from the order on the parties' attorney fee requests.  We consolidated those appeals on December 18, 2012, and consider them together here.

On July 31, 2013, O'Neill filed a motion for sanctions against Mitruka, contending that his appeals are frivolous and were brought solely to delay payment of child support arrearages and attorney fees.  The parties have fully briefed the sanctions motion, which we address below.

II

DISCUSSION

A.	*Mitruka's Challenge to the Family Court's Order Regarding Child Care Expenses*

Mitruka raises two arguments challenging the family court's ruling regarding the payment of child care expenses:  (1) the family court should have ordered O'Neill to pay

---

5	O'Neill requested an award of $11,489 in fees.

a greater amount of Mitruka's *own* child care expenses; and (2) the family court abused its discretion in ruling that Mitruka was responsible for paying the child care expenses claimed by O'Neill because the expenses were neither reasonable nor necessary. We address each argument in turn.

1.      *Mitruka Did Not Seek a Court Order Requiring Payment of Any Child Care Expense Arrearages by O'Neill*

We first address Mitruka's contention that the family court erred because it did not order that O'Neill should pay additional amounts *to him* to reimburse his child care expenses.

Specifically, in listing the issues on appeal, Mitruka contends his "childcare costs are appropriate and should have been awarded, the denial of which violates . . . section 4062 [subdivision] (a)(1)." In the conclusion of his opening brief, Mitruka seeks, among other things, a remand for the family court "to render a ruling providing . . . Mitruka with an order recouping his childcare costs."

Mitruka's argument is baseless because he did not apply to the family court for an order requiring O'Neill to reimburse any of his unpaid child care expenses. The order to show cause on which the family court ruled was filed by O'Neill to establish Mitruka's obligation to pay *her* child care expenses. During the litigation of O'Neill's order to show cause, the parties discussed Mitruka's child care costs and O'Neill stated her belief that some of the expenses were unreasonable. However, Mitruka did not seek relief from the family court, and he submitted no evidence of his own unreimbursed child care expenses. Indeed, Mitruka's opposition to O'Neill's motion for sanctions confirms what is clear

10

from the record: "It is correct that there was not an affirmative motion filed by . . . Mitruka to establish childcare cost arrears."

Mitruka argues that O'Neill's reimbursement of his child care expenses was at issue because the family court's ruling on O'Neill's order to show cause included an offset of $2,840 in favor of Mitruka for the child care expenses that O'Neill owed him. It is evident from the record, however, that the family court did not include the $2,840 offset because Mitruka had put a claim for relief before the court. The family court included the offset only because O'Neill acknowledged at the hearing that she owed Mitruka $2,840 for the child care expenses he had documented to her through September 2011. Mitruka did not make any request for affirmative relief from the family court regarding his unreimbursed child care expenses.[6]

Mitruka argues in his opposition to the sanctions motion that the reimbursement of Mitruka's child care expenses was presented to the family court because he made a request for reimbursement "by way of responsive declaration and testimony in open court" which was "acknowledged by everyone, including the Court as evidenced by Her Honor's ruling." The record does not support Mitruka's statement. The only thing that the parties "acknowledged" in court was that Mitruka also incurs his own child care expenses, some of which Mitruka documented for O'Neill and she agreed to pay. O'Neill discussed *generally* that Mitruka asked her to pay half of the expense of having a child

---

6    Notably, when O'Neill acknowledged during the March 29, 2012 hearing that she owed $2,840 to Mitruka, counsel for Mitruka did not dispute that figure or seek an offset in a greater amount.

11

care provider be on standby all weekend at the rate of $15 per hour, which she found unreasonable. But Mitruka made no attempt to present evidence establishing the amount of any unreimbursed child care expenses he had incurred, and he certainly did not ask the family court to issue an order requiring O'Neill to pay them.[7]

In sum, because Mitruka did not request an order from the family court establishing arrearages for child care expenses owed to him by O'Neill, there is no basis for his claim that the family court erred in not making such an order.

B.    *The Family Court Did Not Abuse Its Discretion by Ordering Mitruka to Pay His Share of the Child Care Expenses Incurred by O'Neill*

We next address Mitruka's contention that the family court erred in ordering him to pay his share of O'Neill's child care expenses, which he challenged as unreasonable and unnecessary.

The order to pay a portion of O'Neill's child care expenses is an order awarding child support, as section 4062, subdivision (a)(1) states that, as additional child support, a court "shall order . . . [¶]  (1) Child care costs related to employment . . . ."  (*Ibid.*)

"Child support awards are reviewed under an abuse of discretion standard. . . .  We cannot substitute our judgment for that of the trial court, but only determine if any judge

---

7    We note that while O'Neill's order to show cause was pending, Mitruka filed his *own* order to show cause, in which he sought a modification of the existing child support order that required the parties to pay half of each other's child care expenses, in favor of an order that each party be responsible only for his or her *own* child care expenses. Mitruka's order to show cause said nothing about seeking to establish arrearages for child care expenses owed to him by O'Neill.  At the May 7, 2012 hearing, Mitruka withdrew his order to show cause to modify child support.

reasonably could have made such an order. . . . Our review of factual findings is limited to a determination of whether there is any substantial evidence to support the trial court's conclusions." (*In re Marriage of Chandler* (1997) 60 Cal.App.4th 124, 128, citations omitted.)

As we have described, the family court ordered in September 2010 that each party would be required to reimburse half of the other party's child care expenses related to employment. Mitruka does not attempt to contest that order. Instead, as we understand Mitruka's position, which he expressed during the family court proceedings, he contends that (1) O'Neill does not need to incur substantial child care costs to allow her to work, because the older children are old enough to take care of themselves, and the youngest child needs fewer hours of care than is currently being provided; and (2) it is not necessary for O'Neill to pay someone $18 per hour to care for four children when only the youngest child actually requires supervision, so that O'Neill should only be paying $10 per hour for child care.

Although Mitruka expressed his views in the family court during his testimony and in his declaration, Mitruka's appellate argument is poorly developed. Some citations to the record appear in the opening brief's initial factual recitation, but the argument portion of the brief is devoid of any record citations. Without any citation to evidence, Mitruka argues that O'Neill's request for child care costs was "patently offensive" because the children are "'good kids'" and are "teenagers" who are, even in O'Neill's opinion, sometimes capable of being left alone by themselves. Mitruka asserts that "[t]he 'childcare' is nothing more than . . . O'Neill's attempt to gain a windfall and improve her

13

lifestyle[,]" and that "the price that is paid to these lifestyle managers is outrageous." Without any citation to the record, he contends that "the child care hours should not exceed 18.75 hours in a week," and the rate should be $10 per hour.

We could reject Mitruka's argument solely on the ground that he has not included any citations to the record in support. (*City of Lincoln v. Barringer* (2002) 102 Cal.App.4th 1211, 1239 [arguments not supported by adequate citations to record need not be considered on appeal].) However, we will exercise our discretion to reach the merits of the issue.

We conclude that substantial evidence supports the family court's finding that the child care expenses incurred by O'Neill are reasonable and necessary for her to work full time as a medical doctor. As we have described, O'Neill provided extensive testimony, both at the hearing and through declarations, about the hours that she works and the reasons that child care is necessary during those hours for all four of the children. As the family court pointed out, the child care provider performs many tasks to care for the older children as well as the youngest, including driving them to activities and appointments and providing a consistent adult presence to keep them safe and supervised.

Further, as to the reasonableness of the hourly rate that O'Neill pays her child care providers, substantial evidence supports an implied finding that the rate is reasonable rather than an attempt to punish Mitruka or obtain a windfall. Notably, O'Neill was paying equivalent hourly rates *before* September 2010 when she was responsible for all of her own child care expenses. The reasonableness of the rate is further evidenced by the fact that Mitruka testified that he pays $15 per hour merely to have a child care

14

provider *on standby*, while O'Neill pays $18 per hour for someone to *actually provide* child care. Mitruka made no attempt to present evidence showing that a qualified child care provider should reasonably be paid less than O'Neill pays her providers.

Based on all of the evidence in the record, we therefore conclude that the family court's finding regarding the necessity of O'Neill's employment-related child care expenses is supported by substantial evidence. Accordingly, the family court did not abuse its discretion in ordering Mitruka to pay his share of O'Neill's child care expenses.

B.      *Mitruka's Challenge to the Ruling on the Attorney Fee Requests*

Mitruka takes issue with the family court's award of attorney fees to O'Neill and its denial of Mitruka's request for fees. As we will explain, both challenges lack merit.

1.      *The Challenge to the Fee Award to O'Neill Lacks Merit*

The family court awarded $8,000 in attorney fees to O'Neill based on her successful order to show cause to establish arrearages in Mitruka's reimbursement of her child care expenses. O'Neill expressly sought the fee award pursuant to section 3557, and the family court expressly awarded the fees under that provision.[8]

Mitruka's sole argument challenging the fee award is that O'Neill purportedly did not give Mitruka timely notice that she was seeking an award of attorney fees pursuant to section 3557. Without any citation to the record, Mitruka argues that pursuant to Code of

---

[8]      As relevant here, when certain preliminary determinations are made, section 3557, subdivision (a) provides for an attorney fee award to "(1) A custodial parent or other person to whom payments should be made in any action to enforce . . . [¶] (A) An existing order for child support." (*Ibid*.)

15

Civil Procedure section 1005 he was entitled to 16 days' notice of O'Neill's fee application, but that "[n]o such notice was provided here."[9]  According to Mitruka, O'Neill "did not ask for fees under [section] 3557 . . . until it was too late."

Mitruka's argument is plainly contradicted by documents in the record that the family court referenced in its order awarding attorney fees to O'Neill.  The attorney fee motion was heard on May 7, 2012.  In June 2011, O'Neill filed and served her order to show cause to establish arrearages, indicating that she was seeking an award of attorney fees.  In a supplemental declaration that O'Neill filed and served in November 2011, O'Neill specified that she was seeking attorney fees under section 3557.  Accordingly, the record does not support Mitruka's contention that O'Neill gave untimely notice that she was seeking an award of fees pursuant to section 3557.[10]

2.      *Mitruka's Request for an Award of Fees Was Properly Rejected*

Mitruka sought an award of attorney fees in connection with the motion to compel production of documents that O'Neill filed and later withdrew.  The family court denied

---

[9]      Code of Civil Procedure section 1005, subdivision (b) states that for any proceeding for which no other time is prescribed, "all moving and supporting papers shall be served and filed at least 16 court days before the hearing."

[10]     For the first time in his reply brief, Mitruka argues that the fee award in favor of O'Neill was flawed because (1) "the billing submitted by [O'Neill] in November 2011 did not equal the amount of fees that were ordered"; and (2) "none of the required findings from . . . section[] 3557 were made."  Based on "'"obvious considerations of fairness,"'" we will refuse to consider the issues that Mitruka raises for the first time in his reply brief.  (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764.)

the request.  As we will explain, we conclude that the request for fees was properly denied.

Although Mitruka did not identify a statutory basis for his fee request in the family court, in his appellate brief he argues that an award of fees was warranted under Code of Civil Procedure sections 2025.480 and 2031.310.  Specifically, those provisions establish — as relevant here — that in the context of a demand for production of documents, "[t]he court shall impose a monetary sanction under Chapter 7 (commencing with Section 2023.010) against any party, person, or attorney who unsuccessfully makes or opposes a motion to compel . . . , unless it finds that the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust."  (Code Civ. Proc., §§ 2025.480, subd. (j) & 2031.310, subd. (h).)  The monetary sanction is limited to "the reasonable expenses, including attorney's fees, incurred . . . ."  (Code Civ. Proc., § 2023.030, subd. (a).)  The award may not be based on "an arbitrary amount" selected by the party seeking the award, and instead must be based on actually incurred expenses.  (*Ghanooni v. Super Shuttle* (1993) 20 Cal.App.4th 256, 263.)  Further, notice of a motion seeking sanctions against an opposing party for bringing an unsuccessful motion to compel must be "accompanied by a declaration setting forth facts supporting the amount of any monetary sanction sought."  (Code Civ. Proc., § 2023.040.)

We apply an abuse of discretion standard of review to the family court's ruling on a request to award attorney fees as a sanction under the Civil Discovery Act.  (*Doe v. United States Swimming, Inc.* (2011) 200 Cal.App.4th 1424, 1435.)

17

Mitruka's request for an award of attorney fees pursuant to Code of Civil Procedure sections 2025.480 and 2031.310 was properly denied because Mitruka failed to provide any evidence establishing his attorney fees. The only document that Mitruka filed concerning his request for attorney fees was a responsive declaration to O'Neill's motion to compel in which he checked a box indicating that he was seeking an award of attorney fees. Mitruka did not file a separate notice of motion seeking an award of fees; nor did he mention his request for fees in the memorandum of points and authorities he filed in opposition to O'Neill's motion to compel. Neither Mitruka nor his attorney filed a declaration setting forth the attorney fees that Mitruka incurred as a result of O'Neill's motion to compel, and neither of them attempted during any court hearing to present evidence of Mitruka's attorney fees. The family court was well within its discretion to deny Mitruka's request for attorney fees as Mitruka presented no evidentiary basis for such an award.

C.      *O'Neill's Motion for Sanctions on Appeal*

After the briefing of this appeal was complete, O'Neill filed a motion requesting that we impose monetary sanctions of at least $22,000 on Mitruka and his attorney, Anthony J. Dunne, jointly and severally. The basis for the sanctions motion is Code of Civil Procedure section 907 and California Rules of Court, rule 8.276(a)(1) and (4),[11]

---

[11]      All further rule references are to the California Rules of Court.

both of which provide for the imposition of sanctions when an appeal is frivolous or taken solely for delay.[12]

"[A]n appeal should be held to be frivolous only when it is prosecuted for an improper motive — to harass the respondent or delay the effect of an adverse judgment — or when it indisputably has no merit — when any reasonable attorney would agree that the appeal is totally and completely without merit." (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650.) Thus, we may impose sanctions either when an appeal indisputably has no merit, or when it is filed for an improper purpose. Sanctions under Code of Civil Procedure section 907 or rule 8.276(a)(1) may be awarded against "a litigant, his attorney, or both." (*Pierotti v. Torian* (2000) 81 Cal.App.4th 17, 36; see also *In re Marriage of Schnabel* (1994) 30 Cal.App.4th 747, 755.)

We conclude that sanctions are warranted because Mitruka's appeal is indisputably without merit. As shown by our discussion of the issues that Mitruka has raised, none of them present even a colorable claim that the family court erred. Mitruka's appellate contention that he should have been awarded additional reimbursements of his child care expenses is frivolous because Mitruka made no such request to the family court. Mitruka's challenge to the family court's ruling on O'Neill's child care expenses is frivolous because he failed to acknowledge or discuss the substantial evidence presented

---

[12]    Rule 8.276(a) gives the appellate court the authority to "impose sanctions . . . on a party or an attorney for:  [¶]  (1) Taking a frivolous appeal or appealing solely to cause delay . . . ."  Code of Civil Procedure section 907 states that "[w]hen it appears to the reviewing court that the appeal was frivolous or taken solely for delay, it may add to the costs on appeal such damages as may be just."

by O'Neill showing that the child care expenses were necessary. Mitruka's contention that O'Neill failed to give timely notice that she was seeking attorney fees pursuant to section 3557 is plainly and clearly contradicted by documents in the record. Finally, Mitruka's appeal of the family court's denial of his attorney fee request is indisputably without merit because the record contains no evidence that he incurred attorney fees. The frivolous nature of Mitruka's appeal is underscored by the fact that Mitruka did not attempt to support his assignments of error with any citations to the record and failed to substantially develop any of his legal arguments.

Sanctions are also warranted because it appears that Mitruka has filed his appeal for the improper purpose of delaying his obligation to pay the amounts ordered by the family court. As our Supreme Court has observed, the fact that an appeal is objectively without any merit is often an indication that the appellant filed it for an improper purpose. (See *In re Marriage of Flaherty*, *supra*, 31 Cal.3d at p. 649 ["the total lack of merit of an appeal" is often "viewed as evidence that appellant must have intended it only for" improper purposes].) The clear lack of merit to Mitruka's appeal along with the fact that his payment obligation has been stayed while the appeal is pending give rise to the inference that Mitruka is not pursuing the appeal in good faith to obtain the remedy he purports to seek, but instead is pursuing the appeal to delay payment of the amounts ordered. Significantly, by virtue of this frivolous appeal and the equally meritless positions he took in the family court, Mitruka has now delayed his obligation to pay his share of O'Neill's child care costs since October 2010, despite an order in September 2010 requiring that he do so.

20

With respect to whether a sanction is warranted against Dunne on a joint and several basis together with Mitruka, we infer from the numerous and glaring typographical errors, especially in the reply brief, along with the superficial nature of the legal argument and the inaccurate record citations, that Dunne has failed to fulfill his professional obligations to devote the necessary attention to the merits of this appeal. Focusing on the clearly frivolous nature of the legal arguments made by Dunne, we infer from "counsel['s] sophistry and . . . litigation tactics, which went beyond proper advocacy and common sense," that Dunne was a willing participant in Mitruka's improper purpose in filing this appeal. (*In re Marriage of Gong & Kwong* (2008) 163 Cal.App.4th 510, 521.) When representing a client, "it is important to remember that '[a]n attorney in a civil case is not a hired gun required to carry out every direction given by the client. [Citation.] As a professional, counsel has a professional responsibility not to pursue an appeal that is frivolous or taken for the purpose of delay, just because the client instructs him or her to do so.'" (*Ibid*.) We therefore conclude that sanctions are warranted against Dunne as well as against Mitruka.

"Factors relevant to determining the amount of sanctions to be awarded a party responding to a frivolous appeal include 'the amount of respondent's attorney fees on appeal; the amount of the judgment against appellant; the degree of objective frivolousness and delay; and the need for discouragement of like conduct in the future.'" (*In re Marriage of Gong & Kwong*, *supra*, 163 Cal.App.4th at p. 519.) Counsel for O'Neill has submitted a declaration stating that O'Neill incurred attorney fees in excess of $22,000 in connection with this appeal and the motion for sanctions. The arrearages at

21

issue in this appeal ($20,841) are less than the attorney fees that Mitruka has forced O'Neill to expend in opposing this appeal, making it just to award O'Neill the full amount of the fees she has incurred here. Further, as we have described, we perceive a high degree of frivolousness in Mitruka's appeal. We therefore order Mitruka and Dunne, on a joint and several basis, to pay sanctions to O'Neill in the amount of $22,000, premised on the amount of attorney fees she has incurred in responding to this frivolous appeal and pursuing her motion for sanctions.

## DISPOSITION

The family court's postjudgment orders are affirmed. O'Neill is awarded sanctions against Mitruka and Dunne, jointly and severally, in the amount of $22,000, and O'Neill is additionally entitled to recover her costs on appeal.

IRION, J.

WE CONCUR:

McDONALD, Acting P. J.

McINTYRE, J.

22